IN RE ESTATE OF THOMAS WILSON.
EMIL TESCHENDORF AND ANOTHER v. MARY ABIGAIL
STRANGEWAY.[1]

March 28, 1947.

No. 34,330.

[1]Reported in 27 N. W. (2d) 429.

*Erickson & Erickson* and *Arthur G. Hallgrain* filed a brief for appellants, and *E. C. Carney,* attorney by substitution, filed a reply brief for appellants.

*Thomas Tallakson* and *Karl F. Diessner,* for respondent.

PETERSON, JUSTICE.

This is an appeal by the executors named in the purported will of Thomas Wilson, deceased, from the order of the district court denying their alternative motion for amended findings and conclusions of law or for a new trial. Only that part of the order relating to the denial of a new trial is reviewable. Magee v. Odden, 220 Minn. 498, 20 N. W. (2d) 87.

Numerous assignments of error have been made, but we think that those determinative of the appeal raise the following questions: (1) Whether, because there was an unvacated order refusing to dismiss the appeal to the district court from the order of the probate court admitting the will to probate, the trial judge was justified in refusing to grant a motion to dismiss the appeal upon the same grounds made at the opening of the trial; (2) whether the executors on their appeal may raise the question that it was error for the trial judge to refuse to sign an order authorizing the sole beneficiary under the will on the beneficiary's application to be made an intervener in the proceedings in the district court; and (3) whether the will was the result of undue influence exerted on decedent by John E. Hanzlik.

The will was executed on October 12, 1943, at General Hospital in Minneapolis, where decedent was then a patient and was to undergo a serious operation the next day. Decedent died on April 5, 1944. On May 29, 1944, the will was admitted to probate without contest by the probate court. On November 27, 1944, an appeal to the district court from the order of the probate court admitting the will to probate was taken by Mary Abigail Strangeway, a niece and one

of decedent's heirs at law. The appeal was perfected by the late James E. Carr, Esq., a member of the Hennepin county bar.

Prior to the trial in the district court, the executors moved to dismiss the appeal from the order admitting the will to probate upon the grounds: (1) That the appeal taken by Mr. Carr was not in fact authorized by the named appellant, Mary Abigail Strangeway; and (2) that the appeal was not timely, because it was not taken within 30 days after the named appellant had waived service of notice of the filing of the order admitting the will to probate by having taken certain proceedings in the probate court. This motion was denied. At the commencement of the trial the executors renewed their motion. No motion or request was made to vacate the order denying the former motion. The trial judge denied the motion to dismiss, because the former order had not been vacated or set aside.

Also, at the commencement of the trial, the Property Tax Reduction Club, through Mr. Hanzlik, presented an order to the trial judge for his signature authorizing it to become a party to the proceedings. The trial judge refused to sign the order. The club did not appeal. The executors on their appeal assign as error the refusal of the trial judge to sign the order.

The will was contested upon the ground, among others, that decedent was induced to make it by undue influence exerted upon him by Mr. Hanzlik. There was evidence showing that decedent was old, sick, weak, and mentally disturbed. Prior to going to the hospital, he had expressed an intention to give his property by will to his sister-in-law, Bertha Quade, who after his death had filed a claim for $2,000 against his estate for taking care of his house for him. He had two nieces in England. He had not expressed any intention of making any provision for them. In his will he made no provision for either Mrs. Quade or the nieces. By the will, he gave his entire estate to the Property Tax Reduction Club, a charitable corporation organized for the purpose suggested by its name (see, Perkins v. Hegg, 212 Minn. 377, 3 N. W. [2d] 671). Decedent's estate consisted of real and personal property of about $3,500 in value, which after payment of debts amounted to about $2,000.

The will was prepared by Mr. Hanzlik, who was president and general manager of the Property Tax Reduction Club. It was witnessed by Mr. Hanzlik and by Louis Korbel, a member of the club and a friend of both decedent and Mr. Hanzlik. The club had been organized by Mr. Hanzlik, who controlled and dominated its affairs. At the time the will was executed the club had become inactive, but Mr. Hanzlik and a small group of friends carried on its activities in the club's name. At that time the club was indebted to Mr. Hanzlik in the sum of approximately $7,000. By resolution, Mr. Hanzlik was authorized to apply its funds in payment of that debt. For many years prior to making his will decedent had been an active member of the club. As a result of his club activities, he and Mr. Hanzlik became friends. A confidential relationship between them resulted. Because thereof, decedent sought and acted upon Mr. Hanzlik's advice relative to such matters as answering correspondence, disposition of his life insurance, protection of his property, and perhaps some other matters. Mr. Hanzlik was instrumental in procuring decedent to make an assignment of his life insurance to the club and also to execute a deed to the club of certain property, which apparently had been destroyed before it had been delivered. All decedent's papers were kept in a file in the club's office, where they were under Mr. Hanzlik's control. Prior to making the will, Mr. Hanzlik and Mr. Korbel conferred with decedent in the hospital several times relative to the disposition of his property in case he died.

The trial judge held that the will was invalid upon the ground, among others, that decedent had been induced to execute the will by the improper (undue) influence of Mr. Hanzlik.

■ Where an order has been made denying a motion, the motion should not be reconsidered unless the order has been vacated. So long as the order remains in effect it operates as a bar to reconsideration of the question decided by it. The proper practice in cases of this kind was considered at length and decided in Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. Hence, the trial judge did not err in refusing to entertain the motion to dismiss the appeal because of the

fact that there was a prior order denying such a motion made upon the same grounds.

■ An appellant may not assign errors affecting other parties; he may assign only errors that were prejudicial to him. Clark v. Stanton, 24 Minn. 232; 1 Dunnell, Dig. & Supp. §§ 360 and 419a. If there was any error in denying the club's application to be made a party, the prejudice, if any, was to the club and not to the executors. The matter was no concern of theirs.

■ Undue influence, as the term itself implies, is influence of such a degree exerted upon the testator by another that it destroys or overcomes the testator's free agency and substitutes the will of the person exercising the influence for that of the testator. The existence of undue influence in a particular case is to be determined by ascertaining the effect of the influence, which in fact was exerted, upon the testator's mind, considering his physical and mental condition, the person by whom the influence was exerted, the time, place, and all the surrounding circumstances thereof. In re Estate of Marsden, 217 Minn. 1, 13 N. W. (2d) 765; In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90; 6 Dunnell, Dig. & Supp. § 10238. Among the factors important as bearing upon the fact of undue influence are the opportunity to exercise it, active participation in the preparation of the will by the party exercising it, a confidential relationship between the person making the will and the party exercising the influence, disinheritance of those whom the decedent probably would have remembered in his will, singularity of the provisions of the will, and the exercise of influence or persuasion to induce him to make the will in question. Here, the evidence supports affirmative findings with respect to all these factors and justifies the finding of ultimate fact that the will of decedent was induced by undue influence exerted upon him by Mr. Hanzlik. We attach little or no importance to the fact that decedent did not provide in the will for his nieces, but we think it important that he did not provide for Mrs. Quade, to whom he was obligated to make some provision and for whom he had expressed an intention to do so. The failure to carry out this intention may well have been caused by influence exerted

upon him to provide for the tax club instead of for Mrs. Quade. If so, it was a case of the club designedly getting decedent's property through the influence of Mr. Hanzlik, who indirectly would be a beneficiary of whatever the club got under the will. The executors stress the fact that decedent recovered from the operation, was discharged from the hospital, and had had ample opportunity to change his will if he was dissatisfied with it. It appeared also that during the interval between his discharge from the hospital and his death his physical and mental condition was bad. The fact that testator lived apart a considerable time after executing the will from the person alleged to have exercised the undue influence is entitled to consideration in support of the view that there was none, but it is not conclusive. In re Estate of Enyart, 180 Minn. 256, 230 N. W. 781. Under the circumstances, we think that the finding of undue influence should be sustained. In re Estate of Olson, 176 Minn. 360, 223 N. W. 677; In re Estate of Keeley, 167 Minn. 120, 208 N. W. 535.

Affirmed.